very well you may proceed good morning so your clients the last of the Mohicans here that's right your honors and and he is the last of the Mohicans because this case is not about challenging the length of a sentence it's about right he's back in the Philippines your honors okay he was he finished a sentence of 60 months and he went into immigration custody and was deported and voluntarily wanted to leave as well so he's back in the Philippines so honors this case there's and I would like to reserve a couple minutes at the end just keep an eye on the clock counselor I will your honor there's no extraterritorial jurisdiction under 18 USC 922 L and 22 USC 2778 under the 2778 is the Arms Export Control Act and 922 L is the prohibition against importation of weapons into United States without permission of the Attorney General and the reason that there isn't extraterritorial jurisdiction your honors is because there is a presumption against extraterritorial jurisdiction there is nothing in the statute also could I ask judge Rawlinson apparently when the papers move it comes on to the microphone it's making some noise back here no problem if you just push the microphone back that'd be great great thank you and and there's a presumption against extraterritorial ality which was discussed in the Morrison case in 2010 neither and that's a presumption but it can be overcome it can your honor but that's and what better what better kind of statute would be a good example than one involving importation well your honor the locus of the statute is actually importation into the United States or exporting from the United States that is the locus of the statutes prohibiting the entry of weapons into the United States or the exportation of weapons from the United States and there is a case that the Bowman exception which was decided back in 1922 and that allows for extraterritorial application of a statute but what Bowman said is and I quote this because it's really important your honors is the presumption against extraterritorial jurisdiction should not be applied to criminal statutes which are as a class not logically dependent on their locality for the government's jurisdiction and the case just gives several examples about what type of their locality for the government's jurisdiction and I would submit your honor that importation into the United States and exporting from the United States is dependent on the locality of the statutes and therefore our statutes do not fall within the Bowman exception but now we have RJR Nabisco right a recent case and the Supreme Court gave us a framework for analyzing extraterritoriality issues and the court explained that the presumption against territoriality can be overcome by a clear indication of extraterritorial effect an indication that can be expressed or implied so why in your view doesn't importation statutes in this case implicate the extraterritorial effect what your honor extraterritorial effect it's not what the statute was importation isn't domestic by its very nature well the importation the effect is the effect in the United States or the effect of exporting from the United States what and Congress had a chance to make it clear when when it passed the brokering amendment when it talked about in another section of the Arm Export Control Act it talked about how how with regard to registration it was only going to apply towards regulating persons who fail to register in the United States or US citizens abroad and it failed to remedy or or to address the the whole regarding the application of extraterritoriality under the statute prohibiting the export or imports of weapons from the United States and Congress clearly could have expressed itself Congress knows how to express itself and we're in I would like the court to take a step back and look at what the implication is if we extend extraterritorial application of these statutes into foreign countries because this case is a perfect example of what happens we had an FBI sting operation where they targeted individuals with no criminal records in the Philippines basically asked them to get them weapons my client no doubt introduced the undercover agent to a customs official in the Philippines he introduced him to a weapons seller they provided the weapons it is a crime in the Philippines to do what they did they could have been prosecuted in the Philippines instead what happens is the government agents not only do they set them up in a sting operation for three defendants with no prior criminal records then what they do is this because they don't trust the defendants they take every single step to import the weapons into the United States they get the import documents they get the export documents they get the shipping container they get the ship the weapons are heading into China the case agent then contacts the FBI legate in China to make sure that the weapons arrive in the United States our clients aren't here our client my client did nothing other than introduce the case agent to the weapons supplier and to a customs official and the evidence of trial was your honor as far as this customs official their own witness who was who did a customs investigation of Mr. Riverez of the customs official first he worked at the airport he didn't work at the port with that custom official determined your honors when she testified she admitted that she investigated Mr. Riverez and he did nothing to facilitate the shipment into the United States and what I would say your honors there's a case Monsignor that talks about talks about when there were actions outside the United States and some where it could be like smuggling or whatever when they when the defendant intentionally causes intentionally causes the actual crime to occur in the United States that is not an extraterritorial application of the statute but because of the jury instructions in this case because of the prosecutor argument what was allowed to happen at trial the jury never decided that question I would say your honors that if our clients and my client had and there was proof and evidence that he to come into the United States and it was presented through the jury instructions in that manner and it was argued by the prosecutor in that way then if they were convicted then we don't even get to the question of whether there's extraterritorial application of the statutes it was because they intended as a Monsignor the case cited by the government cited by the court in the district court it was it was held in that case it was not an extraterritorial application it was in fact because they intended to cause the crime to occur in the United States that it was not extraterritorial it was actually had had an effect as your honor said in the United States intended by the defendants therefore it was there was subject matter jurisdiction under statute we didn't get to that question but that's not what happened here your honors as we presented in our briefs there was an extensive jury conference we proposed alternative jury instructions to to the court which was rejected by the court and those jury instructions asked because we have to look at look at the statute here okay there's to a liability which is aiding and abetting there's to be liability willfully causing it's clear this case is not charged as our clients actually importing the weapons because there's no weapon there was no evidence of it to a means aiding and abetting but you can't aid and abet an innocent person it was presented as a to be case willfully causing okay but what happened at the jury instruction conference would happen to the prosecutors argument this to be case was converted to a to a case well Congress passed to a to be to mean different things to be means willfully causing and the reason why it's willfully causing is because you can't it means something more than just aid in the bed but as we cited in our briefs your honor basically the court instructed on an aiding and abetting theory and wrote out of the statute any requirement that our clients actually be to the jury or found by the jury to have intended to cause the weapons to be shipped into the United States so when you take the combination that's why the two critical issues in this case are the are the view of extraterritorial application and we can see that if there was proof that our clients actually intended and there was proper instructions on that issue we don't even get to this question of extraterritoriality but what happened here your honors is that when the court instructed on the aiding and abetting theory he rejected our alternative instruction that's in the record and what the prosecutor argued in closing is all you have to do these defendants to be found guilty they just had to help out a little bit weapon sales means that they were an indispensable part they aided and abetted and the prosecutor continually using their closing she did not use the language of the to be statute she used the language of the to a statute aiding and abetting aiding and abetting we they just helped out a little bit so what what happens here your honors is this is really an important issue because if we allow this to occur then the United States can reach into any country in the world conduct a steam operation and then reach in and somehow by hook or crook get the defendants to come here and then prosecute them for what was really an internal weapon sales in the Philippines because the court improperly weapons got from the Philippines to the United States solely by the direction of the agents they did everything your honor and there's not one iota of evidence that my client did anything but what are the agent represent himself as in terms of what he wanted to accomplish well he's representing the cartel or whatever and there was something else to as a representative of the Mexican mafia in United States or the cartels in Mexico that's what he wanted to come to the United States well the agent wanted to but there was no evidence that our clients in fact actually intended that the weapons come into United States and the jury was instructed that they didn't have to find that in fact the test all three defendants testified at trial and was undisputed they basically the agents basically represented to them that we just need your help to get the weapons out of the Philippines we don't care how and our clients didn't ask questions about exactly where the weapons were going there was an email to my client that was sent at one point saying the weapons may go to Long Beach and then Tijuana there was a disputed trial but taking the evidence in favor of the government it showed knowledge but knowledge is not enough because if you are charged with willfully causing it's under the statute you have to intend that the result occurs you have to want the result occurs and it was irrelevant and it was not required I guess but I guess your argument would be well they don't really care all they care about is getting their money right but but I think that they do really care and I mean there's an argument you could they care because you want to satisfy the client because you want the business I mean you know I mean if you sold things and then sent them to England and they said I'm you know I'm I'm representing a Mexican cartel in the United States all that wouldn't you wouldn't be satisfying the business contract well well your honor the problem is because of the jury instructions ask the court to look at those jury instructions given and the ones requested the jury didn't have to find whether our clients wanted that result or intended that result the jury instructions said that the defendants have to know or aid in a bet and and we have jury affidavits which we submitted in fact jurors were confused over the meaning of those instructions and they stated in declarations that they didn't know that they were required to find that the that the weapons were coming United States but under my theory your honor for extraterritorial application of the statute to create jurisdiction these defendants needed to intend that result because otherwise your honors just just I mean you're basically asking us to construe it in a way that so that people because you said they could be punished in the Philippines for it so let the country's punish them down but the sort of the elephant in the room is obviously the United States has an interest in keeping you know rocket launchers and you know what you know whatever bushmasters and you know all of those things out and the only way that you can keep them out is going to countries where they're kind of corrupt and they have a system where they can get things through and and get them out so I mean I think the United States is is pretty interested in having that authority well your honor but you have to apply look at whether I would say your honors that the statutes and look at the authority there there's clearly because there is no express interest or express statement of extraterritorial effect you have to find the Bowman exception applies and Bowman exception is not depend on locality and the case is wondering if this is used all the time or is that no one ever makes this challenge because it's so obvious that it would be extraterritorial you know that it's it's sort of I thought well there's really why isn't there a case out there well there isn't your honors and is it because everyone else says well duh of course it applies extraterritorial or is it just that you got you finally articulated it well your honors there's the Morrison case that was decided in 2010 which emphasized that you have to find that the statute has an extraterritorial effect or intended to be applied congressional intent and I believe your honors that there hasn't been that finding so the only way around it is through the Bowman exception and the Bowman exception lists all these all these crimes that really the locus of the crime is abroad or at the high seas like bribing a consular office so there's nothing really go exactly on point as to this statute that's right so this is a novel issue but we're saying is I'm not saying that these defendants in a in a hypothetical situation could never be prosecuted under these statutes but they should be prosecuted when they commit conduct where they're intending that the weapons go to the United States it would have been a far different case and I to the court if the FBI was investigating international trafficking and a weapons manufacturer trafficker went to him say hey I need to get these weapons into the United States to the Mexican Mafia you know we just want you to help facilitate with a little bit of the paperwork but that's not what the case we have here and that's not how the jury was instructed it's pretty close I think it's different your honor because if we if you find that there is either did your instructions were correct or there's extraterritorial application then a weapons manufacturer in the Philippines or anywhere in the world could be prosecuted if they manufacture weapons sell them to undercover agent or sell them to someone else and that person then and they have reason to know that the weapons may come to the United States they could be prosecuted under the law under the statute you're down a little less than two minutes I would reserve your honor yes you may we'll hear from the government thank you honors and may it please the court John Pelletier from the Department of Justice on behalf of the United States I think there were three separate issues discussed this morning and I think that they were a little bit intertwined so I addressed them separately there is the sufficiency of the evidence there are the jury instructions and then there's the extraterritorial effect of the statute why don't you address them in reverse order okay yes your honor now RJR Nabisco clarifies that the extraterritoriality analysis has two components I need to practice that before you come here huh I mean I'm kind of tripping on it a little bit the first the first component is a matter of statutory interpretation did Congress intend this statute to have extraterritorial effect and there's a presumption against extraterritorial effect that has to be overcome in the context of the language or the context of the statute second if the court comes to the conclusion that Congress did not intend the statute to have extraterritorial effect the second component is well then you can still look to the Congress's focus in the statute to determine whether the application in this case was domestic and what you do is you look to Congress's focus in the statute and ask was Congress's focus on a domestic component of or something that occurred in the United States and we believe we prevail under either of these two analyses first the statutory interpretation question Congress question about that it's step one of the extraterritoriality analysis that's articulated in the Nabisco case are we permitted to consider the quote national law recognized by our circuit that the United States may assert jurisdiction when acts performed outside of its borders have detrimental effects within its borders well what this court has said is that there are two kind of canons of statutory interpretation that inform our analysis as to whether Congress intended a statute have extraterritorial effect one is just the general presumption that Congress does not intend generally does not intend statutes to have extraterritorial effect and that's what was discussed in RJR Nabisco and Morrison and then a second canon is that we presume Congress does not legislate in a manner that would violate international law and so those are kind of two canons that inform the question of Congress's intent here both canons did or apply in a manner that results in the conclusion that statute here to have extraterritorial effect the does importation alone just the concept of importation imply extraterritoriality well every statute has to be assessed on its own based on the language and the context I think it's likely in most cases that importation statutes will have extraterritorial effect based on Congress's intent but I can't say categorically that every importation statute because it will depend on the circumstances the larger statutory context and here you had the context is Congress focusing on the flow of weapons into the United States and so when you have that context and if you look at we've cited the various other types of smuggling statute and importation statutes but in our view that establishes Congress's intent that this statute applies extraterritorially but if you went to the even the second part of the RJR Nabisco in our view this is a domestic application of the importation statute even though there's a portion of the conduct occurred extraterritorially because if you look at Congress's focus it's the flow of weapons into the United States that's conduct that's activity that occurs in the United States so that's Congress's focus and the focus is domestic activity so even if you were to look at it through the prism of the second prong of the RJR Nabisco rather than whether the statutory language and context overcomes the presumption in our view we prevail under either under either analysis. Well what about your opponent's argument that the crime really hasn't matured until the moment that the goods get into the United States that's the locus of the of the crime. Yes absolutely your honor and that's a domestic locus it's in importation is is firearms coming into the United States was it which is activity that occurs in the United States and as Congress's focus regardless of whether other conduct other activity involved in the in the importation into the United States occurred outside the United States and that's the second question in the RJR Nabisco or Morrison inquiry the locus the focus of Congress in enacting the statute and we agree the focus is on weapons coming into the United States. So how do you get that into extraterritoriality? Excuse me your honor. How do you get extraterritoriality over a domestic focus? Well that's that's what Congress that's what the court asks in the second prong of RJR Nabisco. And I'm asking you to answer it. Yes the question is even if you look at to whether there's a domestic focus and that means that the applicant and if a statute has a domestic focus even though other activity in that's related to and involved in this criminal conduct occurred outside the United States it is a domestic application under in the second prong. That's what so you look at Congress's focus you ask is it domestic and then you and then you determine that that the and then you under that inquiry if the Congress's focus is domestic and the statutory then the the application of the statute in the case is not an we don't want these type of weapons in the United States. Yes now but but counsel is telling us that all of the activities involving his client took place in the Philippines. Yes your honor. That's not a domestic focus. Well it's not all of their activity they they sent they sent weapons into the United States they imported weapons into the United States most of their activity now they never stepped foot in the United States but Congress's focus is on the importation of the weapons into the United States and importation doesn't only and this goes to the sufficiency question doesn't only embrace actually personally carrying in a weapon into the United States it's the activity involved in sending those weapons into the United States. So let's say the what let's say the agent had said I want to buy all this stuff don't worry about anything else just give them to me and I'll get them out. Is that just all happening in the Philippines then? Well in that case. I mean the agent says I'm gonna I my whole purpose is I want to get them to the cartel in the United States but I'll take care of that part you just get them for me. Well then in that case they would still be knowingly importing them into the United States because they're there they know well I guess what your honor is omitting from that is the idea that they have a stake in them getting into the United States. Yeah if they just want to sell them to the drug dealer there and the drug dealer is going to worry about getting them home you know they want to get their money wouldn't I mean isn't that factual predicate a little bit different than the one we have here because they have you know they say well I haven't I've got a dirty customs person that can do this that and the other. Yes. The agent doesn't say hey just sell them to me don't worry about anything else I'll take care of that. Well I think you have to get into either the quality the the the requirements for each statute. One is knowing importation and the other is willful importation and then the question of whether that kind of conduct is encompassed within the notion of importation or whether that you would have to go through to be for say anything just said hey I want to buy these weapons then clearly that is just happening in the Philippines. If the agent said I want to buy these weapons and the defendants have no knowledge about where they're going correct and then the agent later just sent them to the United States without the knowledge of the sellers correct there's no knowledge it's not knowing importation. And my next hypothetical wasn't quite as strong as the facts in this case right? I mean you know that I I think that's what counsel for the appellant sort of arguing the slippery slippery slope at what point if they just want to make money and they just want to sell weapons and they don't they don't really want to be an importer they don't care you know the fact that someone says I'm going to take them back there does that make them an importer then? If they have no stake in the successful importation into the United States that would be a much closer case but here they knew intended wanted had the purpose of those weapons getting into the United States. I agree yes that that that is a different case but then when I asked you if the agent said you know this is who said that had said I am I am I'm working for the cartel and I'm gonna you know I need weapons for my my businesses in the United States or whatever just get out just give them to me you don't need to worry about anything else right but then you just told me when I said that said oh well they know they're gonna be imported so they're still they're importing. I think in that case that they would not fall under importation without a causation under 2b but we do believe they would be liable under 2b because they would have caused willfully caused the importation because they would have known and wanted the weapons to go into the United States still because they just they just happen to know it but they don't care where they go. Well I think that if if there was evidence that they were totally indifferent to these weapons getting into the United States then there would be a closer question as to whether there was willful conduct there. Now I don't but again just to make clear I'd like to just go back to the facts in this case which are far different here you had defendants. I know but I you know but then appellants counsel of course raised the parade of horribles and that's appropriate in this case and then you stepped right into it and said oh well yeah anyone that sells in that ends up in the United States we've got our hooks in it. Well I think that then you know then you're the parade of horribles on the other side. Well the sufficiency of the evidence doesn't pertain or depend on any parade of horribles. The question is whether the evidence in this case was sufficient to establish a statutory violation of the offenses charged in this case. Okay but your line drawing was a little bit scaring me you know that in terms of. Well I'm sorry your honor I guess it's in it in an abstract without a factual a full factual development of all of the conduct that goes to their mindset their mens rea their actus reis without all of that context it's hard to determine whether in any given case a defendant will have violated to the importation statute or have caused an unlawful importation and I I think that in your hypothetical it would depend a little bit on the nuances of the facts in that case as to the mens rea and the actual conduct. You're backing up a little but the let me ask you this do we need to apply the agency provision 18 USC section 2B in order to affirm the appellant's conviction or are you suggesting that it's an alternative basis for the affirmance? We're suggesting that the defendants both imported and caused the importation. In our view importation is not limited to just personally carrying a weapon into the United States. So you need the 2B conviction? No we don't believe we do because importation doesn't isn't is not limited to just personally carrying it or bringing it in. It extends to being part of a venture that sends the weapons into the United States. So either they imported or they caused the importation. Well 2B is the cause right? Right. Okay excluding the 2B what did they do to import besides I mean yeah excluding the 2B what how can we say that standing as they were in the Philippines that whatever they did in the Philippines was importing into the United States? They were part of a venture that themselves being partners together along with Ravarese the customs agent and the undercover agent to collectively send those weapons into the United States and that qualifies. That's why you need the 2B because they're they're causing. Well they're not doing the the act of importation they are working with others to cause it. Well whenever someone imports something there's always typically someone else who actually transports a third-party conveyor that transports the actual goods. So for example if someone builds guns or builds any kind of good in a foreign country for the purpose of sending them into the United States and then uses a third party to actually convey them and carry them and bring them that that manufacturer in our view imports those goods into the United States even though that manufacturer does not personally carry them in and uses a third-party transporter. And in our view that's the the circumstances of this case. What authority should we consider in defining the term import? Well we've looked to cases that we've looked to the this court's decisions in a separate context which means bringing it in and we've looked at cases that have also evaluated the term import and said it's not it's it's importing and playing an essential role in the transportation of the goods. And we agree that there's you can you could look at that through the prism of importation as the substantive offense or you could look at it through 2b and the court can affirm on either grounds but to back up and look at 2b there's a strong basis for arguing that in this case the defendants caused the importation of the firearms into the United States. Under 2b someone causes by engaging in conduct that was the but-for cause of the criminal act of the actus reus of a substantive offense here importation. The defendants here purchased, obtained, and provided the weapons to the to the undercover agent for sending to the United States. That satisfies the actus reus under 2b of causing and then the conduct has to be willful which means in this court's decision in Berlin purposeful meaning they have to share the purpose of transporting those importing those they had a strong purpose for getting those weapons into the United States. They knew from the get-go that agent Rowe was holding himself out as a broker who is who is located in the United States and who worked for the Mexican Mafia which is a United States organization and then the Mexican cartel a Mexican drug cartel the Mexican Mafia is a I believe a gang that's located in and to transport to the United States he told them Long Beach there's emails there's government exhibit 78 which is a an email from the agent to Ubaldo saying it's very important that we get these goods we get them out through customs they're gonna be sent to Long Beach we're gonna make a lot of money so there was the profit motive this was the defendants here envisioned the start of a relationship of a business relationship of a profitable business relationship they had a strong stake they wanted those weapons to get into the United States when after the weapons were packed up there are text messages from Sajuco and Ubaldo saying how'd the shipment go did everything go okay we've cited those in our briefs so the evidence establishes number one that they caused the importation they're the but-for cause and that they acted willfully that they shared that purpose they shared the purpose of importing those weapons into the United States. Just briefly to touch upon the jury instructions the jury instructions accurately conveyed those requirements now with the with regard to the mental component there was no claim in the trial that the mental component of the jury instructions were erroneous so that's reviewed under plain error and the district court used the term willful it tracks the statutory language and that was appropriate here and with regard to the actus reus of causing importation being the but-for cause that is exactly what the jury instructions conveyed the standard that was conveyed and the defendants argued below that there should be something higher than but-for causation which is directing the agent and the district court did not give those and I believe that they agree that the correct standard is but-for causation. If the court has any additional questions I'd be happy to answer them. Counsel I do. Oh yes Judge Rawlinson has a question. Do you agree with the opposing counsel that the jury was instructed that it did not have to find any intent on the part of the defendants? No the district court instructed the jury first of all it instructed the jury of the substantive requirements for a 922 L offense and a 2778 B offense the mens rea for 922 L is 2778 B is willfulness and the court discussed the willfulness requirement in 2778 B so it gave those instructions and then when it instructed under the causing standard under 2B it said that the defendants had to willfully cause conduct that would have qualified as an importation offense had it been committed by the defendants and if that's the case then they are liable as the principal so the instruction included the willfulness component now that they're there they've argued that willfulness should have been further fleshed out but they never raised that in the district court so a plain error review applies to that. Do you equate willfulness with intent? Willfulness in the context of 2B means purposeful conduct which is in some cases of intent and purposeful have been had similar meanings if you look to the model penal code when they speak of purposeful it means you have to have the purpose the intent of of a certain object meaning in this case all right thank you thank you counsel your time is expired we'd respectfully request the court of very well miss McLean you have some reserve time several points that I just dismisses appeal so I adopt all his arguments on the jury instruction which you did in the brief we understand and it's instrumental and I would ask the court to look at pages 43 through 55 of mr. Sajuco's brief and I think he lays out very clearly how the jury was misinstructed and how we objected to it so I don't believe it's a plain error standard and even if it's not a plain I still would submit the statutes do not have an extraterritorial effect respond to your opponent's argument what where did he grow go wrong he's wrong to the extent that he's saying that under RJ are Nabisco that somehow that there is extraterritorial effect that can be implied through the mere operation of the statute I think if you read RJ are Nabisco carefully and I've submitted a rule 28 J response I filed it yesterday I'd ask the court to read it I think we respond to his arguments on RJ are Nabisco I think it's very clear from Morriston there has to be congressional intent that the statute of extraterritorial effect and what we're saying is your honors that if you look at this statute does it could be applied to these defendants if they willfully cause and and basically I would ask the court to read the government's closing argument that dovetails with the misinstructions by the court because what the government argued in closing is and this is a quote it's not on the record pages 897 898 this is what the prosecutor argued in closing quote it's for those crimes where people come together where everybody does a little part of it that's what being an aider and a better means and that's what each of these defendants did they played an indispensable part of this crime Sergio Sajuco and Cesar Baldo put the crime in motion they sold the firearms you can't ship firearms if you don't have firearms they sold the fireman's and firearms and they had an indispensable part and on page 898 she went back to that again why isn't she arguing willfully cause you can't aid in the bad and innocent agent the government's trying to write willful cause out of the jury instructions and which is also necessary for extraterritorial effect and what the government final point quote 898 of the record each played an important and indispensable role in the crime no weapons no shipment no weapons dealer no weapons no shipment no getting them out of the Philippines getting caught by customs in the Philippines no getting them to the United States so she equated the defendants conduct with the Philippines with guilt which dovetailed with the court's jury instructions and therefore your honors the counts two through five must be struck and because the statute does not have extraterritorial effect and conspiracy jurisdiction is defined by the substantive statutes count one must go to thank you counsel your time has expired the case just argued will be submitted for decision and the court will adjourn
judges: O'scannlain, Rawlinson, Callahan